UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BLAKE HADDIX, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 15-31-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOSEPH MEKO, Warden of Little Sandy | ) | **MEMORANDUM OPINION** |
| Correctional Complex, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 29, 2006, Blake Haddix was convicted in the Breathitt Circuit Court of murder and second-degree assault and sentenced to a 40-year term of imprisonment. [Record No. 4-3, p. 38] Haddix is incarcerated at the Little Sandy Correctional Complex and is eligible for parole on November 14, 2025.[1] After unsuccessfully appealing and petitioning for collateral relief in the state courts, Haddix now petitions this Court for collateral relief under 28 U.S.C. § 2254. [Record No. 1] However, for the reasons discussed below, Haddix's petition will be denied and a Certificate of Appealability will not be issued with respect to any issue presented.

## I.

On February 10, 2015, Haddix filed the current petition for writ of habeas corpus under 28 U.S.C. § 2254, asserting seven grounds for relief. [Record No. 1] First, Haddix

---

[1]      *See* Kentucky Online Offender Lookup,
http://kool.corrections.ky.gov/KOOL/Details/126674 (last visited December 3, 2015).

claims that he was denied his Sixth Amendment right to trial by an impartial jury.  [*Id.*, p. 6]  Next, he asserts five claims of ineffective assistance of counsel based on his trial counsel's alleged failure to: (i) contact or call witnesses with knowledge of the murder victim's propensity for violence; (ii) prepare and present affirmative defenses; (iii) consult an expert regarding Haddix's mental health; (iv) object to the prosecutor's erroneous comment that the victim was shot from behind; and (v) seek a change of venue. [*Id.*, pp. 8−15]  Haddix also alleges that counsel was ineffective because he introduced incorrect evidence that the petitioner had previously threatened police.  [*Id.*, p. 13]  The Kentucky courts have rejected all of these claims.  [*See* Record No. 1, pp. 2−5.]

Consistent with local practice, Haddix's petition was presented to a United States Magistrate Judge for initial review and issuance of a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).   On October 29, 2015, United States Magistrate Judge Candace J. Smith issued a Recommended Disposition.  [Record No. 10] Based on her review of the record and the applicable law, Magistrate Judge Smith recommended that Haddix's petition be denied.  On December 1, 2015, Haddix filed his objections to the Recommended Disposition.[2]  [Record No. 13]  Having fully reviewed the record, the Court agrees with Magistrate Judge Smith's Recommended Disposition.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Haddix's writ of habeas corpus may be granted only if the state court decision "resulted

---

[2]     The Court has conducted *de novo* review of the issues addressed in the Recommended Disposition to which Haddix has objected.   28 U.S.C. § 636(b)(1)(C).

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Under the "contrary to" test, "[a] state court's decision is contrary to clearly established Federal law if it (1) arrives at a legal holding that contradicts a Supreme Court case or (2) involves facts that are materially indistinguishable from a Supreme Court case but nonetheless arrives at a substantially different result." *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

An unreasonable application of clearly established federal law occurs "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a [petitioner's] case." *Williams*, 529 U.S. at 409. In determining whether a case involves an unreasonable application of federal law, the question is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Id.*, at 409–11.

### III.

On September 5, 2003, Woodrow and Estill Mullins (father and son) were drinking alcohol on Estill's front porch with Blake Haddix. *Haddix v. Commonwealth of Kentucky*, No. 2007-SC-000214-MR, 2008 WL 3890352, *1 (Ky. Aug. 21, 2008). At some point, Woodrow entered the residence. *Id.* Next, Estill's wife, Gladys, called Estill inside. *Id.* When Estill entered and closed the door, a bullet struck him. *Id.* Gladys left the house through the back door to drive to her sister's house, hearing two more shots. *Id.*

As Gladys was leaving, Woodrow grabbed his .410 gauge shotgun and went outside where Haddix shot him in the chest/neck and abdomen. *Id.* When officers arrived, they found Woodrow dead, Estill injured, and Haddix lying in a state of intoxication in the driveway with one hand on a .32 caliber revolver. *Id.* Haddix was then taken into custody. Ballistics tests indicated that both rounds that struck Woodrow belonged to the .32 caliber revolver. No shotgun shells were recovered. *Id.* at *1. At trial, Haddix admitted that he shot Woodrow Mullins, allegedly in self-defense. *Id.* However, he denied shooting Estill Mullins. *Id.*

Following his conviction conviction, Haddix filed an appeal premised on the fact that three jurors allegedly failed to disclose relevant information in response to juror qualification questions. *Id.* at *2. On remand, the Breathitt Circuit Court held an evidentiary hearing, re-entering judgment. [Record No. 1-2, pp. 4–5] Haddix again appealed, but the Kentucky Supreme Court affirmed the new judgment. [Record No. 1-4]

Subsequently, Haddix moved the trial court to vacate the judgment under Rule 11.42 of the Kentucky Rules of Criminal Procedure ("Ky. R. Crim. P."), alleging nine claims of ineffective assistance of counsel. [*See* Record No. 4-8, pp. 30–51.] The Breathitt Circuit Court denied the motion [Record No. 1-3] and Haddix appealed the decision. The Kentucky Court of Appeals affirmed the circuit court's decision, except for the claim regarding Haddix's counsel's failure to call witnesses who could testify to Woodrow Mullins' reputation for violence. [Record No. 1-6, p. 14] Following an evidentiary hearing, the Breathitt Circuit Court found that Haddix was not prejudiced by

this alleged failure.  [Record No. 4-16, pp. 4–10]  As a result, Haddix again appealed the denial of his Ky. R. Crim. P. 11.42 motion regarding this particular issue.  On appeal, the Kentucky Court of Appeals affirmed [Record No. 1-7], and the Kentucky Supreme Court denied discretionary review.  [Record No. 4-17, pp. 37–41, 53]

## IV.

The present petition for habeas relief [Record No. 1] reflects many of the claims presented by Haddix on direct appeal or through his post-conviction motions with the Kentucky courts.  He continues to assert a claim of juror mendacity, as well as six of the ineffective assistance of counsel claims.

### A.     Lack of Procedural Issues

Respondent Meko does not allege any procedural grounds for denying Haddix's petition; however, he has not waived these defenses.  [Record No. 4, p. 2]  Thus, the magistrate judge properly considered this avenue for denying the petition.  *See* 28 U.S.C. § 2254(b)(1).  [*See* Record No. 10, pp. 7–8.]

A state petitioner procedurally defaults on a claim under 28 U.S.C. § 2254 by failing to raise it in state court or through the state's ordinary appellate review procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–47 (1999); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Where state court remedies are no longer available to the petitioner, procedural default bars federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Williams*, 460 F.3d at 806.

Alternatively, if remedies are still available to the petitioner, his failure to exhaust those remedies bars him from seeking review.   28 U.S.C. § 2254(b)(1)(A).   Proper exhaustion requires that the petitioner fairly present each of his claims to the state courts. *O'Sullivan*, 526 U.S. at 845.   "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414−15 (6th Cir. 2009).

Haddix has exhausted the juror mendacity claim.   Even though Haddix only cited to state law when he appealed his conviction on that basis, the Kentucky Supreme Court was apprised of the existence of a federal constitutional claim.   [Record No. 4-4]   For instance, Haddix contended that he was deprived of his right to an impartial jury.   [*Id.*, p. 2]   After remand of the issue to the circuit court, the Kentucky Supreme Court affirmed, applying a state court decision[3] reflecting the controlling standard found in *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).   [Record No. 1-4, p. 3] Thus, the state courts were alerted to the "constitutional dimension" of Haddix's juror mendacity claim.   *Houston v. Waller*, 420 F. App'x 501, 514 (6th Cir. 2011); *Abshear v. Moore*, 354 F. App'x 964, 967 (6th Cir. 2009) (fair presentation occurs where petitioner phrases claims "in terms sufficiently particular to allege a denial of a specific constitutional right" or relies on state cases employing federal constitutional analysis).

With respect to the ineffective assistance of counsel claims, Haddix exhausted his state court remedies through post-conviction motions and subsequent appeals of those

---

[3]      *Taylor v. Commonwealth*, 175 S.W.3d 68, 74–75 (Ky. 2005).

decisions.   [Record No. 4-8, pp. 30−51]   While he only appealed the circuit court's *failure to hold an evidentiary hearing* regarding these claims, the magistrate judge properly determined that Haddix provided the factual and legal arguments of his underlying claims to the Kentucky Court of Appeals. *Wagner*, 581 F.3d at 414−15. [Record No. 4-11]   Further, the appellate court discussed at length the claims of ineffective assistance of counsel, citing to the relevant Supreme Court precedent. [Record Nos. 1-6, p. 3; 1-7, p. 5]   And Haddix attempted to obtain discretionary review from the Kentucky Supreme Court.   [Record No. 4-17, pp. 37−41, 53]   Because Haddix fairly presented these claims to the state courts, he has exhausted his remedies with regard to the ineffective assistance of counsel claims.   *O'Sullivan*, 526 U.S. at 845; *see Nali v. Phillips*, 681 F.3d 837, 851−52 (6th Cir. 2012).

### B.        Right to an Impartial Jury

Haddix argues that the Kentucky Supreme Court unreasonably applied Supreme Court precedent regarding his right to be tried by an impartial jury by affirming the circuit court's denial of a new trial based on juror mendacity.   [Record Nos. 1, p. 6; 8, pp. 6−12]   In particular, a juror named J.S. did not disclose: (i) her family's involvement with the criminal justice system; (ii) that her brother-in-law was related to one of the victims; and (iii) that she has multiple sclerosis.   [*Id.*]   In his objections, Haddix claims that the state court failed to apply the proper standard because it cited to *Woodward v. Commonwealth*, 141 S.W.3d 63 (Ky. 2004).   [Record No. 13, p. 2]   Further, he asserts

that juror J.S. dishonestly answered material questions on *voir dire*, and that those answers "would not survive a motion to excuse for cause."  [*Id.*, p. 3]

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ." U. S. CONST. amend. VI.  If a defendant's right to an impartial jury is violated, he is entitled to a new trial.  *McDonough*, 464 U.S. at 553.  The defendant can prove that this right was violated by demonstrating that a juror failed to honestly answer a material question on *voir dire* and that the correct response would have provided a valid basis for a for-cause challenge. *Id.* at 556.

Bases for a for-cause challenge include a personal relationship with a party, witness or attorney, or a biased state of mind concerning a party or issue in the case. *English v. Berghuis*, 529 F. App'x 734, 739 (6th Cir. 2013).   Thus, a defendant establishes a for-cause challenge by demonstrating either that a juror deliberately concealed information or that actual bias existed.  *Id.*; *see, e.g.*, *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995).  "Actual bias is 'bias in fact' and focuses on the record at *voir dire*."  *English*, 529 F. App'x at 739 (quoting *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005)).

The magistrate judge correctly noted that even though the Kentucky Supreme Court did not cite *McDonough Power Equip., Inc. v. Greenwood*, it applied the correct

standard.[4]  464 U.S. 548, 556 (1984).  [Record No. 10, p. 11, *referring to* Record No. 1-4, p. 3]  As a result, the question is whether that court unreasonably applied *McDonough* to the facts presented.  28 U.S.C. § 2254(d)(1).

### 1.    Family Involvement with the Law

The Kentucky Supreme Court found that J.S. was asked material questions regarding her family's involvement in criminal matters and her relationship to the victims, but that it was not clear that she answered the questions dishonestly.  [Record No. 1-4, pp. 5–6]  For instance, J.S. could not remember if two calls she made to the police resulted in criminal complaints, and she testified at the evidentiary hearing that she forgot about the criminal complaint she filed for her sister.  [Record No. 7, DVD of evidentiary hearing on 10/3/2008, 9:34–9:42]  Further, with respect to other family members involved with the criminal justice system, she believed that counsel's question referred to immediate family members.  [*Id.*, 9:45–9:53]

Haddix contends that J.S. lied during *voir dire* and that she was "forced to acknowledge the truth" when confronted with public records.  [Record No. 13, p. 3]  However, the state court believed J.S.'s testimony, and the petitioner has not shown by clear and convincing evidence that J.S. was dishonest.  28 U.S.C. § 2254(e)(1).  Instead,

---

[4]       *See, e.g.*, *Early v. Packer*, 537 U.S. 3, 8 (2002).  As discussed above, the Kentucky Supreme Court cited to a state court decision that cited the standard in *McDonough*.

Haddix merely quibbles with the consistency of J.S.'s statements.[5]   Further, the state court found that even if J.S. had disclosed her family's involvement with the law, this would not have been a valid basis for striking her for-cause, which is consistent with *Bowling v. Commonwealth*, 942 S.W.2d 293, 299 (Ky. 1997) (overruled on other grounds).   [Record No. 1-4, pp. 5−6]   Therefore, Haddix failed to establish that J.S. deliberately concealed her family's involvement with the law and that she would have been stricken had the concealed information been revealed.   *English*, 529 F. App'x at 739.

## 2.     Relationship to the Victim

Regarding J.S.'s relationship to the victim, the Kentucky Supreme Court found that she made an honest mistake in answering the question.   [Record No 1-4, pp. 5−6]   The Court will not disturb this factual finding because Haddix has failed to demonstrate by clear and convincing evidence that J.S.'s answer was not an honest mistake.   28 U.S.C. § 2254(e)(1); *see Patton v. Yount*, 467 U.S. 1025, 1036 (1984).   In his objections, Haddix argues that it was inconsistent for J.S. to claim that she did not want to serve on the jury, while simultaneously failing to disclose a fact that would "definitely keep her off the jury."   [Record No. 13, p. 3]

However, if J.S. was not aware of her relationship to the victim, then her actions were not inconsistent with the idea that she did not want to serve on a jury.   Further, her

---

[5]     The Court cannot say that it was unreasonable for the state court to believe J.S.'s testimony that she forgot whether calls to police resulted in actual criminal complaints or whether she had a made a complaint for someone else.

statement that she was unaware of her brother-in-law's relationship to the victim is consistent with the fact that she stated that they were not close.  [Record No. 7, DVD of evidentiary hearing on 10/3/08, 9:53−58; 10:07:35; 10:10:31]  In addition, it was not unreasonable for J.S. to assume that "family" members were limited to immediate family members.  [*Id.*, 9:45−53]  Consequently, Haddix has failed to establish that J.S. deliberately concealed her relationship to the victim.  *English*, 529 F. App'x at 739.

### 3.    Multiple Sclerosis

The Kentucky Supreme Court noted that J.S. was asked if she suffered from any health problems *that would preclude her from sitting on a four-day trial*, and that the jury qualification questionnaire asked if the jurors would need to be *permanently excused* due to a health condition.  [Record No. 1-4, p. 8]  The fact that J.S. failed to disclose her multiple sclerosis may not have been material or dishonest because she was able to sit for the trial.

But even if J.S. deliberately concealed a material fact by failing to disclose her condition, the magistrate judge properly determined that Haddix failed to flesh out any evidence demonstrating that J.S.'s multiple sclerosis affected her short-term memory or any other facet of her ability to decide a case.  [Record No. 10, p. 15]  In fact, at the evidentiary hearing, J.S. was able to recall both long-term and short-term information, in particular information regarding the trial.  [*Id.*]  Even though she experienced some memory problems independent of her condition, Haddix has failed to show by clear and

convincing evidence that these problems disqualified J.S. from service as a juror. *Woodard v. Commonwealth*, 147 S.W.3d 63, 69 (Ky. 2004).

Because Haddix failed to demonstrate that J.S. dishonestly answered material questions, such that the correct answers would have subjected her to a for-cause challenge, he was required to demonstrate actual bias. *Johnson*, 425 F.3d at 326. The Kentucky Supreme Court properly held that he failed to carry his burden because he presented no evidence of actual bias. [Record No. 1-4, pp. 5−6]

### C.   Ineffective Assistance of Counsel Claims

Haddix next asserts that the Kentucky courts' decisions regarding six of his claims of ineffective assistance of counsel are contrary to or involve an unreasonable application of federal law. [Record No. 1, pp. 6−15] However, the respondent contends that the Kentucky courts correctly identified and applied the federal standard for these claims. [Record No. 4, pp. 29−49]

The Sixth Amendment provides that criminal defendants have a right to "assistance of counsel" for their defense. U.S. CONST. amend. VI. To demonstrate ineffective assistance of counsel, a petitioner must show that his counsel's performance was highly deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (citations omitted).

A petitioner must then show that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Strickland*, 466 U.S. at 687. The Court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

Here, the state courts applied the *Strickland* standard. [Record Nos. 1-6; 1-7] Consequently, the issue presented is whether the state courts unreasonably applied *Strickland* in determining that the petitioner received effective assistance of counsel.

### 1.    Witnesses with Knowledge of Victim's Propensity for Violence

Haddix claims that the Kentucky Court of Appeals unreasonably applied *Strickland* because it found no ineffective assistance where Haddix's counsel failed to call witnesses with knowledge of victim Woodrow's propensity for violence. [Record Nos. 1, p. 8; 8, pp. 14–18] The appellate court determined that Haddix failed to establish either prong of *Strickland*. [Record No. 1-7, p. 4] It reasoned that Haddix failed to overcome "the presumption of reasonableness of the professional assistance by counsel at trial" because the majority of the testimony described propensities from forty years prior to the incident, and because Haddix presented no testimony regarding his trial counsel's strategy. [*Id.*, pp. 4–5] Further, the Kentucky Court of Appeals determined that Haddix failed to demonstrate that the testimony would have affected the outcome of the trial because of the victim's frailty and the strong case against Haddix. [*Id.*, p. 5]

- 13 -

In addition, the magistrate judge noted facts demonstrating that counsel may have declined to call these witnesses for strategic purposes.  [Record No. 10, p. 22]  For example, the primary character witness testified that he heard about Woodrow Mullins' violence in his younger days, but that Woodrow was always good to him.  [Record No. 7, DVD of evidentiary hearing on 7/19/12, 9:34–9:49]  Because this testimony would have had little probative value and could have even worked against the petitioner, trial counsel may have acted wisely in declining to introduce it.

Moreover, Haddix's own testimony contradicted the idea that Haddix feared Woodrow Mullins because of his reputation.  [*See* Record No. 7, DVD of trial on 9/28/06, 1:35:30–1:37]  In his objections, Haddix claims that the relationship between Woodrow Mullins and the petitioner is not exclusive of the fact that the petitioner could have feared Woodrow based on his reputation for violence.  [Record No. 13, p. 4]  While the two propositions are not exclusive of each other, Haddix's stated view of Woodrow weighs against the idea that he feared him.  For instance, Haddix testified that he had never had an "ill word" with Woodrow, he loved Woodrow, and he thought it was strange that Woodrow became hostile.  [*Id.*, 1:14, 1:35:30–37, 1:38]  In any event, the Court's decision is primarily based on the lack of relevance of the reputation testimony, as discussed above.

Further, with the prosecution's strong case against Haddix, the magistrate judge correctly concluded that Haddix failed to show that the reputation testimony had a reasonable probability of affecting the outcome at trial.  [Record No. 10, p. 25]  Haddix

- 14 -

objects to this conclusion, arguing that the jury would have believed his testimony if it had been corroborated by the reputation witnesses.  [Record No. 13, p. 3]  However, any corroboration would have had a negligible effect because the information was outdated and countered by Haddix's own testimony about his perception of Woodrow.

Because testimony regarding Woodrow Mullins' reputation for violence was limited in relevance, Haddix has failed to show that his counsel was deficient by failing to present this testimony.  *Strickland*, 466 U.S. at 687. In addition, the petitioner has not demonstrated a reasonable probability that the outcome at trial would have been different with this reputation testimony.  *Id.*

### 2.    Affirmative Defenses and Jury Instructions

The petitioner also contends that counsel was ineffective because he failed to seek the proper jury instructions for voluntary intoxication, extreme emotional disturbance ("EED"), and lesser included offenses.  [Record Nos. 1, p. 9; 8, pp. 19–22]   Following the circuit court's denial of Haddix's Ky. R. Crim. P. 11.42 motion, the Kentucky Court of Appeals determined that there was no ineffective assistance of counsel because Haddix's requested instructions were not supported by the evidence.[6] [Record No. 1-6, p. 7]  For example, the appellate court reasoned that "mere drunkenness" does not equate with the Kentucky Penal Code's definition of the defense of voluntary intoxication. *Rogers v. Commonwealth*, 86 S.W.3d 29, 44 (Ky. 2002).  [*Id.*]

---

[6]     In any event, the instructions were given to the jury.  [Record No. 1-6, p. 7]

- 15 -

In his objections, the petitioner argues that his self-defense theory was not incompatible with the defense of voluntary intoxication.  [Record No. 13, p. 5]  This argument is not relevant to the magistrate judge's conclusion -- as well as the Kentucky Court of Appeals' conclusion -- that Haddix has failed to set forth additional evidence that would have required an instruction on voluntary intoxication.  [Record Nos. 1-6, p. 7; 10, p. 29]  As a result, Haddix's counsel was not deficient in failing to request this instruction.

Additionally, the state appellate court found that an EED defense conflicted with Haddix's testimony that he remained calm during the events of the evening at issue. [Record No. 1-6, p. 10]  In his objections, the petitioner asserts that "being shot at while leaving a disagreement and seeing your attacker reloading a shotgun is more than sufficient to show an 'emotionally charged scene.'"  [Record No. 13, p. 5]  While the average person might experience an extreme emotional disturbance in that situation, Haddix's testimony reveals that he did not.  [*See* Record No. 1-6, p. 10.]

Further, Haddix claims that Kentucky law requires that an EED instruction go to the jury.  [Record No. 13, p. 5]  However, Kentucky courts are only bound to instruct juries on instructions "supported by the evidence."  *Morrow v. Commonwealth*, 286 S.W.3d 206, 213 (Ky. 2010).  Because an EED instruction was not supported by the evidence, Haddix's counsel was not deficient in failing to request it.

In addition, the state appellate court noted that the jury was instructed on murder, manslaughter in the first and second degree, and reckless homicide.  [Record No. 1-6, p.

11]  While Haddix argues that counsel should have requested a jury instruction on assault in the fourth degree, he fails to establish a basis for that instruction.  [Record No. 8, pp. 21–22]  His proffered reason is that Estill did not experience a serious physical injury, suggesting that he cannot be guilty of assault in the second degree.  However, the magistrate judge correctly cites Ky. Rev. Code § 508.020(b), which does not require a showing of serious physical injury where the defendant intentionally causes physical injury to another with a deadly weapon.  Because Haddix intentionally caused injury to Estill using a deadly weapon, it is irrelevant that the injury was not "serious."  Consequently, Haddix has failed to demonstrate deficient performance by counsel in failing to seek a jury instruction for a lesser offense.

The magistrate judge also evaluated Haddix's claim that counsel was ineffective because he failed to develop the evidence for the aforementioned affirmative defenses.  [Record No. 10, pp. 29–31]  For instance, the magistrate judge concluded that Haddix failed to demonstrate deficient performance regarding the defense of voluntary intoxication because Haddix did not point to any additional evidence of his intoxication.  Further, as discussed above, the petitioner's testimony indicated that he did not experience an extreme emotional disturbance.  As a result, counsel was not required to investigate these avenues any further.

Even if counsel's performance was deficient, Haddix did not suffer prejudice by counsel's alleged failures.  For instance, the jury heard a wealth of evidence regarding Haddix's intoxicated state.  [Record No. 10, pp. 29–30]  And with no evidence that

- 17 -

Haddix reacted emotionally in the situation at issue, the Court cannot conclude that further investigation into an EED defense would have had a reasonable probability of affecting the outcome of trial.  *Strickland*, 466 U.S. at 687.

Due to the limited evidence concerning these affirmative defenses, Haddix has not shown that counsel was deficient by failing to investigate them or flesh them out in court. *Strickland*, 466 U.S. at 687.  Nor has he shown that he suffered any prejudice.  *Id.* Therefore, Haddix has not demonstrated that the Kentucky courts unreasonably determined that his right to effective assistance of counsel was not violated in this regard.

### 3.      Petitioner's Mental Health

Haddix also alleges that the Kentucky courts unreasonably applied *Strickland* in determining that he was not denied effective assistance by his counsel's failure to consult a medical expert about his competency to stand trial and his withdrawal of the insanity defense.  [Record Nos. 1, p. 11; 8, pp. 22–24]  He bases this allegation on the fact that a consulting report for his Social Security benefits application found him "not competent." [Record No. 8, p. 23]

After the circuit court denied this claim without a factual analysis, the Kentucky Court of Appeals held that the circuit court did not err in deciding the issue without an evidentiary hearing because the record was "sufficiently complete" to evaluate whether trial counsel's decision was "wise" or "competent."   [Record No. 1-6, pp. 12–13] Further, Haddix has presented absolutely no evidence of what a medical consultation would have revealed, meaning he cannot demonstrate a reasonable probability that a

medical expert's testimony would have changed the result of the proceeding. [7] *See Manis v. Warden, Lebanon Corr. Inst.*, No. 1:14-cv-057, 2015 WL 2341107, at *2 (S.D. Ohio May 14, 2015). Without a showing of prejudice, Haddix cannot establish that the Kentucky courts unreasonably applied *Strickland* to the ineffective assistance of counsel claim premised on his mental health. 466 U.S. at 687.

Haddix's argument that the magistrate judge and state courts confused incompetence with insanity is inapposite. [Record No. 13, p. 6] The *only evidence* Haddix presented regarding counsel's failure to investigate both his competence and his sanity is the Social Security disability finding of "not competent." [Record No. 8, p. 23] With respect to both issues, the disability finding is simply insufficient to establish that Haddix was prejudiced by counsel's failure to inquire into and present evidence of Haddix's mental health. *See Manis*, 2015 WL 2341107, at *2; *Moore v. Curtin*, No. 11-10874, 2014 WL 1328161, *6 (E.D. Mich. March 31, 2014) (diagnosis of schizophrenia "does not raise a *bona fide* doubt as to [petitioner's] competence" to enter a plea, even though petitioner received Social Security disability benefits for the condition); *cf. Walker v. Hoffner*, 534 F. App'x 406, 413 (6th Cir. 2013) (finding counsel was ineffective for failing to investigate petitioner's mental health where petitioner presented evidence of a "known, extensive, and well-documented history of mental illness" that included a Social Security disability determination).

---

[7]     Moreover, the fact that someone is considered disabled under the Social Security Act does not necessarily indicate that he is not competent to stand trial. *See Manis*, 2015 WL 2341107, at *3.

### 4.      Prosecutor's Erroneous Comment

The petitioner claims that the Kentucky courts unreasonably applied *Strickland* by finding that he suffered no prejudice by his counsel's failure to object to the prosecutor's erroneous comment that Woodrow Mullins was shot from behind.  [Record No. 1, p. 14]  First, it does not appear that the prosecutor ever made the alleged comment.  However, assuming that he did, the circuit court reasonably found that Haddix suffered no prejudice because the prosecutor corrected the misstatement by explaining the medical examiner's findings in great detail.  *See, e.g.*, *Walker v. Morrow*, 458 F. App'x 475, 490 (6th Cir. 2012) (finding that counsel did not need to object to prosecutor's incorrect comment regarding gun residue because prosecutor corrected herself); *Wallace v. Sexton*, 570 F. App'x 443, 456–57 (6th Cir. 2014) (prosecutor's statements during closing did not result in reasonable probability of different outcome due to strong evidence undermining the defendant's theory of the case).   [Record No. 7, DVD of trial on 9/29/06, 11:41:15–11:45, 12:09–12:10:15]

In his objections, Haddix argues that the prosecutor's statement "thoroughly destroy[ed] the self-protection principle."  [Record No. 13, p. 8]  However, because the prosecutor corrected his misstatement, Haddix's self-defense argument was not damaged. *See, e.g.*, *Millender v. Adams*, 187 F. Supp. 2d 852, 876 (E.D. Mich. 2002) (where prosecutor's misstatement of facts was corrected minutes later by two statements, defense counsel's failure to object did not result in prejudice); *Smith v. Warden, Warren Corr. Inst.*, No. 1:11-cv-083, 2012 WL 668608, *2 (S.D. Ohio, Feb. 29, 2012) (no prejudice

where defense counsel failed to object to prosecutor's misstatement that witnesses testified that the defendant had a gun).  Therefore, Haddix has not demonstrated that he suffered prejudice due to his counsel's failure to object to the prosecutor's alleged misstatement.  *Strickland*, 466 U.S. at 687.

### 5.   Change of Venue or Sequestration of Jury

Haddix next argues that the Kentucky courts unreasonably applied *Strickland* by finding that he was not prejudiced by his counsel's failure to move for a change of venue or to have the jury sequestered.  [Record Nos. 1, p. 14; 8, pp. 28−31]  Specifically, he highlights that Breathitt County is a small community and that the families involved in the events are well-known.  [Record No. 8, pp. 28−29]  As a result, he asserts that he did not have an impartial jury.

If a defendant cannot receive a fair trial due to prejudicial pretrial publicity or local bias, the court should grant a change of venue.  *Sheppard v. Maxwell*, 384 U.S. 333, 362−63 (1966); *see also Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012).  This type of prejudice can be either presumptive or actual.  *Campbell*, 674 F.3d at 593 (citing *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007)).  Presumptive prejudice results from an "inflammatory, circus-like atmosphere" pervading both the courthouse and surrounding community.  *Campbell*, 674 F.3d at 593.

On the other hand, courts evaluating the existence of *actual* prejudice look to the court record.  In the Sixth Circuit, *voir dire* is the "primary tool" for determining if publicity has caused actual prejudice.  *Id.*  Even if a juror has knowledge of the existence

- 21 -

of a case or "some preexisting opinion as to the merits," the defendant may not have been denied a fair trial. *Id.* The issue is whether the juror swore that he could set aside his opinion and whether his "protestation of impartiality" should have been believed. *Foley*, 488 F.3d at 387.

First, the petitioner has not presented facts of an "inflammatory, circus-like atmosphere" surrounding the courthouse or the community. *Campbell*, 674 F.3d at 593. Second, he has not demonstrated actual prejudice. During *voir dire*, the court and trial counsel thoroughly questioned the jury pool members regarding their knowledge of the case, excusing those who appeared to be biased. [Record No. 7, DVD of trial on 9/26/06, 10:56:34−10:58; 12:04:22; 12:28:03−12:30:18]  Second, Haddix has not pointed to any particular juror who was biased, aside from J.S., who is discussed above.  Without a showing of presumptive or actual prejudice, Haddix cannot establish that his counsel was deficient in failing to seek a change of venue.

Further, Haddix cannot establish that he was prejudiced by counsel's failure to seek to sequester the jury.  He has not even alleged with particularity that any of the jurors were actually exposed to outside information during the trial.  *See Gunter v. Steward*, 2:13-cv-00010, 2014 WL 2645452, *8−9 (M.D. Tenn. June 13, 2014) (no ineffective assistance where counsel did not file a motion to sequester the jury, even though the case involved matricide in a small community).  Moreover, the trial judge questioned the jurors each day about their outside exposure to the case, and on the third day of trial, he questioned each individually.  [Record No. 7, DVD of trial on 9/28/06,

- 22 -

11:06–11:27]   The record reflects no problematic responses.   Consequently, it was reasonable for the state court to find that Haddix suffered no prejudice by his counsel not requesting jury sequestration.

### 6.     Prejudicial Evidence

Finally, the petitioner asserts that the Kentucky courts unreasonably applied *Strickland* by finding that counsel's introduction of certain evidence was not prejudicial to his case.   [Record Nos. 1, p. 13; 8, pp. 24–26]   In particular, Haddix's counsel introduced a 911 call and police log incorrectly showing that Haddix had previously threatened to shoot police officers.   [Record No. 10, p. 36]   In reality, the call was made by the petitioner's relative, Gray Haddix.   [*Id.*]   Upon discovering the error, counsel played a later call demonstrating that the earlier call and log were incorrect.   [*Id.*]

When Haddix raised this claim in his Ky. R. Crim. P. 11.42 motion, the circuit court denied it without any factual analysis, and the appellate court affirmed.   [Record Nos. 1-3, p. 3; 1-6, pp. 4–5]   Where a state court does not state its reasoning for a decision, the habeas court must determine what arguments could have supported the state court decision.   *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   Then, the habeas court asks whether fair-minded jurists could disagree that those arguments are inconsistent with the holding in a prior decision of the Supreme Court.   *Id.*

- 23 -

Here, Haddix has not demonstrated that he was prejudiced by the introduction of this evidence.  Trial counsel was able to correct the error.[8]  *See United States v. Estrada*, 313 F. App'x 799, 804 (6th Cir. 2008) (attempt to "unring a bell" was not futile where evidence against defendant dwarfed the evidence's import).  However, Haddix argues that even this correction caused him prejudice because the jury could then conclude that Haddix belonged to a family of "violent outlaws."  [Record No. 8, p. 25]  Further, in his objections to the magistrate judge's recommendation, Haddix also notes that jurors may have realized his relationship to the other Haddix due to their residence in a small town. [Record No. 13, p. 8]  Even if the Court takes these claims as true, the magistrate judge properly noted that the strong case against the petitioner indicates that there is no reasonable probability that the result would have been different if the jury had not heard this information.[9]  Therefore, Haddix has failed to show that he was prejudiced by any deficient performance on the part of trial counsel with regard to evidence of Haddix's relative's threat to police.

### D.    Certificate of Appealability

The magistrate judge has recommended that the Court not issue a Certificate of Appealability with regard to any issue raised in this proceeding.  [Record No. 10, pp.

---

[8]    In *Ward v. United States*, 995 F.2d 1317, 1319 (6th Cir. 1993), the court held that counsel was ineffective by asking a question that opened the door to the prosecution's character evidence against the defendant.  [Record No. 8, p. 25]  In *Ward*, however, defense counsel was unable to correct his mistake.

[9]    Haddix asserts that the jury would have been more likely to believe his version of events if this evidence had not been introduced.  [Record No. 13, p. 8]  The Court accepts this argument; however, in light of the strong case against Haddix, he has still failed to show a reasonable probability of a different outcome at trial based on this evidence.

45–46] A Certificate of Appealability may be issued only where the petitioner has made a "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). When a court's denial of the requested relief is based on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a court's denial is based on a procedural ruling, the movant must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and debatable "whether the district court was correct in its procedural ruling." *Id.*

Haddix objects to the magistrate judge's recommendation that the Court not issue a Certificate of Appealability.  [Record No. 13, p. 9]  Because the Court will deny his petition on the merits, rather than on a procedural ruling, Haddix is required to demonstrate that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.  Haddix has failed to carry his burden.  With respect to the juror mendacity claim, he has not demonstrated that reasonable jurists would find it debatable whether J.S. was dishonest in her responses on *voir dire* or that she would have been stricken for-cause had she answered the questions correctly.  Regarding the six ineffective assistance of counsel claims, Haddix has failed to show that reasonable jurists would debate whether he suffered prejudice by any of counsel's alleged deficiencies.

**V.**

The Kentucky courts' decisions regarding Haddix's claims of juror mendacity and ineffective assistance of counsel are neither contrary to nor do they involve an unreasonable application of clearly established federal law.  Accordingly, it is hereby

**ORDERED** as follows:

1.      The Recommended Disposition of United States Magistrate Judge Candace J. Smith [Record No. 10] is **ADOPTED IN FULL** and **INCORPORATED** by reference.

2.      The objections to the Recommended Disposition filed by Haddix on December 1, 2015 [Record No. 13] are **OVERRULED**.

3.      Blake Haddix's petition for habeas corpus relief under 28 U.S.C. § 2254 [Record No. 1] is **DENIED**, and this matter is **DISMISSED** from the Court's docket.

4.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent Joseph Meko, Warden of the Little Sandy Correctional Complex.

5.      A Certificate of Appealability shall not issue with respect to any issue.

This 4th day of December, 2015.



Signed By:

**_Danny C. Reeves_**

**United States District Judge**